## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

PAUL BRANCH,

      Petitioner,

v.                                                      Case No. 4:20-cv-441-WS/MJF

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Paul Branch has filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 5. Respondent ("the State") answered, providing relevant portions of the state court record. Doc. 10. Branch replied. Doc. 12. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Branch is not entitled to habeas relief.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I. BACKGROUND AND PROCEDURAL HISTORY[2]

On March 15, 2019, multiple deputies with the Jefferson County Sheriff's Office drove to Branch's residence in Monticello, Florida. The deputies were attempting to locate Branch because he was a wanted fugitive. They located Branch standing next to his pickup truck outside his residence. While Investigator Matthews was speaking with Branch, Matthews saw—in plain sight next to the truck Branch was standing beside—a 20-ounce plastic bottle and a lithium battery that was cut in half. Matthews knew, based on his training and experience, that the substance inside the bottle was methamphetamine. Matthews asked Branch what the battery was for, and Branch stated that it was old. When asked about the plastic bottle, Branch stated: "Shit man your [sic] killing me." Ex. D, Arrest Report at 3.[3]

Deputies obtained a search warrant for Branch's residence. In Branch's kitchen underneath the sink, deputies found another 20-ounce bottle of liquid

---

[2] The background facts are drawn from the sworn arrest report that provided the factual basis for Branch's *nolo contendere* plea. *See* Doc. 10-1, Ex. B (Plea & Acknowledgement of Rights); Ex. G at 103-08 (Plea & Sentencing Tr.); Ex. D (J. & Sentence with attached Arrest Report).

[3] Citations to the state-court record are to the electronically-filed exhibits attached to the State's answer. Doc. 10-1. The court cites the exhibit followed by the page number of the original document. When a page of a document bears more than one page number, the court cites the Bates stamp number appearing at the top right corner of the page.

methamphetamine and a small glass jar of flammable liquid. Deputies searched inside Branch's truck and found a small black bag containing two plastic containers with methamphetamine, a pipe, a loaded hypodermic needle, a used hypodermic needle, a burned silver spoon, and a contact lens container with a cotton ball inside.

All items were field tested. All items tested positive for methamphetamine.

On March 28, 2019, Branch was charged in Jefferson County Circuit Court Case No. 2019-45 CFA, with one count of Manufacture of Methamphetamine, a second-degree felony. Doc. 10-1, Ex. A. The charge carried a maximum possible penalty of 15 years of imprisonment. Ex. B; *see also* Fla. Stat. § 893.13(1)(a)1; Fla. Stat. § 775.082(3)(d).

Branch was appointed counsel and negotiated a plea agreement. Ex. B. Pursuant to the agreement, Branch pleaded *nolo contendere* to the crime as charged in exchange for the State agreeing to a sentence of 36 months of imprisonment with credit for 60 days of time served. *Id*. The plea agreement was memorialized in a document entitled "Plea and Acknowledgement of Rights," which Branch executed on May 13, 2019. *Id*.

Branch's plea and sentencing hearing was held the same day—May 13, 2019. Ex. G at 103-08 (Plea & Sentencing Tr.). The trial court conducted a plea colloquy, accepted Branch's plea, adjudicated him guilty of Manufacture of

Methamphetamine, and sentenced him consistent with the plea agreement to 36 months of imprisonment with credit for 60 days. *Id*.; *see also* Ex. D (J. & Sentence); Branch did not appeal the judgment and sentence. Doc. 1 at 2.

On July 5, 2019, Branch filed a *pro se* motion for modification of sentence under Florida Rule of Criminal Procedure 3.800(c). Ex. E. The state circuit court denied the motion on July 12, 2019. Ex. F.

On August 14, 2019, Branch filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Ex. G at 1-13. The state circuit court denied relief. *Id*. at 93-108 (Order & Attach.). The Florida First District Court of Appeal ("First DCA") affirmed *per curiam* and without written opinion. *Branch v. State*, No. 1D19-4438, 298 So. 3d 553 (Fla. 1st DCA 2020) (Table) (copy at Ex. I). The mandate issued July 28, 2020. Ex. I.

On December 27, 2019, Branch filed a second *pro se* Rule 3.850 motion. Ex. J at 1-8. The state circuit court denied relief. *Id*. at 9-10. The First DCA affirmed *per curiam* and without written opinion. *Branch v. State*, No. 1D20-167, 301 So. 3d 197 (Fla. 1st DCA 2020) (Table) (copy at Ex. K). The mandate issued September 18, 2020. Ex. M.

Branch filed his *pro se* federal habeas petition on September 2, 2020. Doc. 1. Branch's amended petition raises four claims. Doc. 5 at 9-15. The parties agree that

Branch exhausted his state postconviction remedies for all of his claims. Doc. 5 at 9-16; Doc. 10 at 12, 15, 18, 23). The State asserts that Branch is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard.

## II. RELEVANT LEGAL PRINCIPLES

### A.    Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[4] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[4] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean

the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and

convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue

unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

**B.**   **Clearly Established Federal Law Governing *Nolo Contendere* Pleas**

In determining the validity of a plea to a criminal charge, a plea of *nolo contendere* stands on equal footing with a guilty plea. *North Carolina v. Alford*, 400 U.S. 25, 35-36 (1970); *Hudson v. United States*, 272 U.S. 451 (1926); *see also Florida v. Royer*, 460 U.S. 491, 495 n. 5 (1983) ("Under Florida law, a plea of nolo contendere is equivalent to a plea of guilty."). "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process." *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (en banc) (citing *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969)). The Due Process Clause requires that a guilty plea be entered knowingly and voluntarily. *Boykin*, 395 U.S. at 243 n.5; *see also Bousley v. United States*, 523 U.S. 614, 618 (1998). "A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir.1995) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)).

"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748. Accordingly, in the context of a guilty plea, the standard for determining the validity of the plea is

"whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *Alford*, 400 U.S. at 31; *Boykin*, 395 U.S. at 242. The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. *See McMann v. Richardson*, 397 U.S. 759, 770-74 (1970).

The advantages of entering a plea only may be secured "if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). Recognizing that a prisoner often "has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea," courts accord great deference to a defendant's statements during a plea colloquy and are reluctant to allow a defendant to go behind his own sworn testimony. *Blackledge*, 431 U.S. at 71.

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 73-74 (citations omitted). "The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of

collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place." *Premo v. Moore*, 562 U.S. 115, 132 (2011).

When a petitioner challenges the voluntariness of his plea based on allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), applies. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see also Premo*, 562 U.S. at 118 (identifying *Strickland* as the clearly established federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain). To obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The focus of *Strickland*'s performance prong in a plea situation is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56–57 (quoting *McMann*, 397 U.S. at 771). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an

informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). "To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client. *Wofford*, 748 F.2d at 1508 (citing *Walker v. Caldwell*, 476 F.2d 213, 217 (5th Cir. 1973), in turn citing *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948)).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused regarding the plea. *Stano*, 921 F.2d at 1150–51 (citing *McMann*, 397 U.S. at 774; *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); and *Hill*, 474 U.S. at 56).

To meet *Strickland*'s prejudice prong in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the

proceeding." *Strickland*, 466 U.S. at 693. Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 58-59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter*, 562 U.S. at 105 (citations omitted).

## III.  DISCUSSION

**Ground One**      **"Incorrectly calculated scoresheet that requires resentencing to cure due process violation." Doc. 5 at 9.**

Branch alleges that prior to his plea and sentencing, the State "prepared and used an [sic] scoresheet that was incorrectly calculated by calculating a charge as a level 8 instead of a level 1." Doc. 5 at 9. Branch is referring to the "Prior Record" grid of a sentencing guidelines scoresheet that was filed on the day of his plea and sentencing. *See* Doc. 10-1, Ex. C. That scoresheet scored Branch's prior conviction for Accessory After the Fact to Second-Degree Murder as an offense level 8. *Id.* Branch asserts that in his first Rule 3.850 proceeding, the State conceded the error; therefore, the state court was required to "resentence using the corrected scoresheet." Doc. 5 at 9.

### A.    State Court's Decision

Branch presented this claim to the state circuit court as Ground I of his first Rule 3.850 motion. Ex. G at 2-5. The State conceded the scoresheet error, but argued that Branch was not entitled to relief from his plea or sentence because the negotiated plea of 36-months of imprisonment was not predicated on a specific guidelines range, and Branch was sentenced to the same terms to which he had agreed in his plea agreement. Ex. G at 43-46.

Page 14 of 27

The state circuit court denied Branch's claim for the following reasons:

> Ground One of Defendant's motion alleges that his scoresheet incorrectly reflects convictions for felony DUI, accessory after the fact, and 42 misdemeanors for writing worthless checks. Defendant says had these scoresheet errors[FN 1] been corrected the State would have offered him a lesser sentence. Defendant's claims are legally insufficient. Any scoresheet error is harmless where a defendant's sentence is the result of a negotiated plea agreement. *Hill v. State*, 730 So. 2d 322, 323 (Fla. 1st DCA 1999). Defendant in this case was sentenced according to the terms of the plea agreement. *See Exh 2 – Plea & Sentencing Transcript.*

> > FN 1  A response to the motion was filed on Oct. 17, 2019, in which the State concedes that accessory after the fact was incorrectly scored.

Ex. G at 93. The First DCA summarily affirmed without explanation. Ex. I.

## B.    Branch's Claim Does Not Warrant Habeas Relief

The First DCA's summary affirmance is an "adjudication on the merits" of Branch's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *Id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. —, 138 S. Ct. 1188, 1192 (2018). Consistent with *Wilson*, this court presumes that the First DCA rejected Branch's claim for the reasons provided by the state circuit court.

The state court concluded that Branch failed to establish a due process violation because he did not show that the scoresheet error affected his plea or sentence. A fairminded jurist could agree with this conclusion. Branch's sentence was the result of his negotiated plea agreement—he was sentenced to the same terms to which he had agreed. Branch also failed to demonstrate that the scoresheet error affected the knowing or intelligent nature of his plea. *See* Ex. B (Plea Agreement); Ex. G at 103-08 (Plea & Sentencing Tr.).

The state court's decision is consistent with the clearly established constitutional standard governing guilty and *nolo contendere* pleas. *See Alford*, 400 U.S. at 31; *Boykin*, 395 U.S. at 242, *see also Scott*, 698 F.2d at 429. Branch is not entitled to habeas relief on Ground One.

**Ground Two**      **"Ineffective assistance of counsel by failing to point out and have scoresheet errors corrected prior to plea offer and sentencing." Doc. 5 at 11.**

Branch alleges that during plea negotiations, he told defense counsel of the scoresheet error discussed above, but counsel failed to correct it. Branch asserts that counsel's conduct prejudiced him because "the error affected the plea offer." Doc. 5 at 11.

### A.    State Court's Decision

Branch presented this claim to the state court as Ground II of his first Rule 3.850 motion. Ex. G at 6-9. The State argued that Branch was not entitled to relief, because the negotiated sentence "was not a guidelines controlled sentence," and Branch failed to "adequately allege that had counsel performed her duties differently, the State would have made a separate plea offer." Ex. G at 46; *see also id*. at 66-69 (attached email exchange between prosecutor and defense counsel demonstrating that negotiated sentence was independent of Branch's scoresheet).

The state circuit court denied relief for the following reasons:

> Ground Two of Defendant's motion alleges that counsel was ineffective by failing to bring the scoresheet errors to the trial court's attention before sentencing.[FN 2] As acknowledged by the State, the scoresheet contains one error. Even if counsel was deficient for not having this one error corrected, Defendant cannot demonstrate any prejudice because it was harmless error.

> FN2   Defendant says counsel knew of the errors as he
> made her aware of them weeks prior to sentencing.

Ex. G at 93-94. The First DCA summarily affirmed without explanation. Ex. I.

### B.    Branch's Claim Does Not Warrant Habeas Relief

The First DCA's summary affirmance is an "adjudication on the merits" of Branch's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

The state court rejected Branch's claim because he failed to establish that he was prejudiced by counsel's failure to insist that the scoresheet be corrected. Fairminded jurists could agree with this decision. Branch's conclusion that "the error affected the plea offer" was purely speculative and devoid of factual support. Branch offered nothing but his own conjecture that the State's plea offer of 36 months of imprisonment was predicated on the scoresheet or a specific guidelines range.

Speculation falls far short of satisfying *Strickland*'s prejudice standard. *See Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."); *see also, e.g., Wilson v. Sec'y, Fla. Dep't of Corr.*, 786 F. App'x 878 (11th Cir. 2019) (denying ineffective-assistance claim because petitioner

Page 18 of 27

failed to show that he was prejudiced by counsel's failure to pursue *Batson* challenge during jury selection; petitioner's only argument was that a more racially-balanced jury would have been less likely to convict him, but "conclusory argument falls short of showing a substantial likelihood of a different result."); *Aldridge v. Crickmar*, 680 F. App'x 809, 812 (11th Cir. 2017) (state court reasonably denied ineffective-assistance claim because petitioner failed to show that he was prejudiced by counsel's failure to pursue prosecutorial misconduct issue; petitioner offered the state court "only speculation" that a witness testified falsely).

The state court's rejection of Branch's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Branch is not entitled to habeas relief on Ground Two.

### Ground Three    "Ineffective assistance of counsel by failing to investigate and suppress evidence obtained in violation of 4th Amendment." Doc. 5 at 13.

Branch claims that trial counsel was ineffective for failing to investigate and file a motion to suppress the incriminating evidence seized from his property. In support, Branch alleges that the evidence "was found by officers searching the backyard without a warrant and after petitioner was already arrested for a warrant out of another county." Doc. 5 at 13.

## A.    State Court's Decision

Branch presented this claim to the state circuit court as Ground I of his second Rule 3.850 motion. Ex. J at 1-8. The state circuit court denied relief for the following reasons:

> **Claim**: Mr. Branch claims his trial counsel was ineffective for failing to file a motion to suppress evidence obtained from inside and around [his] home that incriminated him. He claims the arresting officer lied that certain contraband was in plain view next to his truck, and that contraband served the basis for a search warrant of Mr. Branch's home. He says [he] told his trial counsel this, and they did not file the motion because they did not believe it would be successful and did not want to jeopardize Mr. Branch's plea deal. The arrest affidavit and warrant are attached to this order. *Attachments A & B.*

> **Analysis**: Mr. Branch's claim, had it been raised, would have created a factual dispute that would have been resolved at a suppression hearing. That hypothetical hearing, if Mr. Branch testified, would have been a swearing match between the officer and Mr. Branch. As is alleged in the motion, his counsel did not believe Mr. Branch would win a swearing match and thought safeguarding the plea deal was the best option, This was a reasonable, strategic decision that this Court cannot second guess. *Strickland v. Washington*, 466 U.S. 668, 689 (1984) ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").

> The claim is denied.

Ex. J at 9-10. The First DCA summarily affirmed without explanation. Ex. K.

## B.    Branch's Claim Does Not Warrant Habeas Relief

The First DCA's summary affirmance is an "adjudication on the merits" of Branch's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

The state court's decision is not "contrary to" clearly established Federal law, because the state court identified and applied the two-part *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Branch must show that the state court's application of the *Strickland* standard was unreasonable. In reviewing the state court's decision, this court defers to the state court's factual findings, because they are amply supported by the record, and because Branch has not rebutted them with clear and convincing evidence to the contrary. *See* 28 U.S.C. §§ 2254(d)(2), 2254(e).

According to Branch's allegations in state court, trial counsel made a strategic decision not to file a motion to suppress after balancing the likelihood of success and the risk of jeopardizing the favorable plea offer. *See* Ex. J at 4. On the record before the state court, a fairminded jurist could agree with the state court's conclusion that

Branch failed to satisfy *Strickland*'s performance prong. In *Premo v. Moore, supra*, the Supreme Court addressed a similar claim. There, a state prisoner who pleaded no contest challenged "the adequacy of representation in providing an assessment of a plea bargain without first seeking suppression of [evidence] assumed to have been improperly obtained." *Premo*, 562 U.S. at 118.

In reversing the Ninth Circuit's grant of habeas relief, the Supreme Court emphasized: "Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." *Premo*, 562 U.S. at 124. Courts, therefore, must "strictly adhere" to the *Strickland* standard of affording "substantial deference" to a lawyer's strategic choices. *Premo*, 562 U.S. at 125, 126. And what's more, "[the] AEDPA compounds the imperative of judicial caution." *Id.*, 562 U.S. at 125.

Here, the state court was reasonable to conclude that Branch failed to establish that "no competent attorney would think a motion to suppress would have failed." *Premo*, 562 U.S. at 124. A reasonable attorney could conclude that it was unlikely Branch would win the credibility dispute over Investigator Matthews. The state court also was reasonable to conclude that counsel's strategic choice—to forego a motion to suppress and to opt for the plea bargain the State was offering—was reasonable.

The state court's rejection of Branch's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Branch is not entitled to habeas relief on Ground Three.

| | |
|---|---|
| **Ground Four** | **"District court of appeal erred in failing to reverse and remand for an evidentiary hearing as required by Rules 9.141 and Rule 3.850." Doc. 5 at 15.** |

Branch's final claim involves the process that the state court afforded him in his second Rule 3.850 proceeding. *See* Doc. 5 at 15 (identifying First DCA Case No. 1D20-167). Branch claims that the First DCA violated his due process rights "by failing to follow the rule requiring the Rule 3.850 motion to be reversed for an evidentiary hearing." Doc. 5 at 15. Branch explains that the record on appeal "was not supported by the exhibits referred to in the motion. The exhibits were after the fact exhibits." *Id*. at 15.

## A.    Branch's Claim that He Was Denied Due Process in His Postconviction Proceeding Is Not Cognizable on Federal Habeas Review

A prisoner's challenge to the process afforded him in a state postconviction proceeding is not a cognizable claim for federal habeas relief, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *Alston v. Dep't of Corr., Fla*., 610 F.3d 1318, 1326 (11th Cir. 2010) (holding that habeas petitioner's challenge to state postconviction proceeding

– the state court's ruling that petitioner waived his state collateral proceedings – was not cognizable on federal habeas review). The Eleventh Circuit explained in *Alston*:

> Federal habeas relief is available to remedy defects in a defendant's conviction and sentence, but "an alleged defect in a collateral proceeding does not state a basis for habeas relief." *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004); *see also Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) (collecting cases), *cert. denied*, –– U.S. ––, 130 S. Ct. 500, 175 L. Ed. 2d 355 (2009). There is a valid reason behind this principle: "[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—i.e., the conviction itself—and thus habeas relief is not an appropriate remedy." *Carroll*, 574 F.3d at 1365. Furthermore, such challenges often involve issues of state law, and "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992).

610 F.3d at 1325-26; *see also, e.g., Carroll*, 574 F.3d at 1365-66 (holding that habeas petitioner's claim—that the state court violated his due process rights when it summarily denied his postconviction claim without an evidentiary hearing—did not state a claim on which federal habeas relief could be granted).

Branch's allegation of a procedural defect in his second state collateral proceeding does not provide a basis for federal habeas relief. Accordingly, Ground Four should be denied.

**B.    Branch Is Not Entitled to Habeas Relief Even If His Claim Is Construed as a Challenge to the State Court's Substantive Ruling**

Branch fares no better even if his claim were construed as a challenge to the First DCA's merits ruling on his underlying ineffective-assistance claim involving the motion to suppress. As discussed in the preceding section, the state court's denial of relief on the ineffective-assistance claim was neither contrary to, nor an unreasonable application of the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Branch, therefore, is not entitled to habeas relief on Ground Four.

## IV.  CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is

Page 25 of 27

whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a).  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. CONCLUSION

For the reasons set forth above the undersigned respectfully **RECOMMENDS** that:

1.  The amended petition for writ of habeas corpus, Doc. 5, challenging the judgment of conviction and sentence in *State of Florida v. Paul Branch*, Jefferson County Circuit Court Case No. 2019-45 CFA, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Panama City, Florida, this <u>10th</u> day of March, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**